UNITED STATES, for Use of A. S. SCHULMAN ELECTRIC CO., v. STANDARD ACC. INS. CO. et al.

No. 6784.

Circuit Court of Appeals, Seventh Circuit.
July 13, 1939.

Rehearing Denied Sept. 14, 1939.

Milton M. Adelman and Charles P. Schwartz, both of Chicago, Ill., for appellant.

William P. Sidley, James F. Oates, Jr., Howard Neitzert, and James W. Coultrap, all of Chicago, Ill. (Sidley, McPherson, Austin & Burgess, of Chicago, Ill., of counsel), for appellees.

Before EVANS, MAJOR, and KERNER, Circuit Judges.

This action to recover $19,070.31 was brought by a sub-contractor and was based upon a bond which the principal contractor gave to the United States. The appellee, Lamson Co., was the principal contractor, and the appellee, Standard Accident Insurance Co., was the surety. The Federal statute, 40 U.S.C.A. § 270, provides for suit by sub-contractors on bonds given by the principal contractor to the U. S. Government.

Lamson contracted with the U. S. Government in August, 1931, to furnish and install mail handling equipment in the new post office being erected in Chicago. Lamson executed a sub-contract with Schulman on October 1, 1932. In this contract Schulman agreed to do certain work and furnish material for $90,386. The work was done and this sum was paid in full.

The present action is to recover for installations made by Schulman in the general nature of "extras." They might be called additions to the material and services described and required in the original contract.

Appellees rely largely upon a provision of the Lamson-Schulman sub-contract which reads:

"(Schulman agreed) * * * to furnish all labor and materials necessary for the completion of the job * * * (and) to make no charge against The Lamson Company for any extras or extra except where the Lamson Company itself receives an equivalent extra from the Government."

Lamson received no pay or compensation from the Government for extras. Schulman showed or attempted to show that the parties modified this provision of their agreement. By the new or modified agreement Lamson agreed to pay for work the obligation to perform which was, at the time of the agreement, controverted.

Lamson denied liability and also pled by way of counterclaim, breaches of contract by Schulman. The total amount of damages for which it made claim by counterclaim was $10,163.73, and interest.

The jury's verdict read, "We, the jury, find the issues for the plaintiff and assess the plaintiff's damages at the sum of $1,364.41." The court ordered judgment for this amount with costs, and also by the same judgment directed that the defendant take nothing by its counterclaim. Aggrieved at the smallness of the award, the plaintiff brings this appeal.

EVANS, Circuit Judge.

The case is one of many issues and the facts are involved, and, to some extent and as to some issues, the evidence is conflicting. It would seem to be an ideal case where a special verdict could be used advantageously.

A study of the record and the briefs convinces us that it is impossible to reconcile the verdict of $1,364.41 for the plaintiff on any hypothesis other than that the controverted issues were determined by the jury in plaintiff's favor. Equally impossible of reconciliation are the findings on the controverted issues in plaintiff's favor, with an award of damages of $1,364.41, where four of the extra items, to which reference will hereafter be made, aggregated $7,771 and for which plaintiff is entitled to recover provided the jury correctly found the disputed issues for the plaintiff. The amount of each of these items is not in dispute. As to them the evidence did not permit of their division or reduction or of their allowance in part and disallowance in part.

We sympathize with the District Court's effort to reconcile the jury's verdict with the evidence and give judgment for the amount awarded by the jury, but we are unable to do so.

Briefly, we will state said facts.

Plaintiff's case must rest upon proof of an agreement which modified the original agreement which denied it compensation for "extras" unless the Government allowed the same to the principal contractor. We use the word "extras" rather loosely and comprehensively. Plaintiff's right to recover must depend on something more than the furnishing of extras. Schulman was required to show a modification of the contract or a new contract. Lamson denied that any services were rendered or material furnished other than for what contractors call "extras." As the compensation for extras was specifically excluded by the original agreement, recovery must depend on a new agreement or a valid modification of the old one.

This being the narrow issue, our inquiry is directed to the facts bearing thereon.

While the work was being done, Schulman received instructions from Lamson to do certain work and furnish materials which it (Schulman) asserted were outside the original contract. It refused to proceed with this work, unless its right to compensation for materials and services for these additional materials and services, was recognized.

This controversy arose in the midst of the work. Lamson was under obligation to complete its work (under penalty of $200 per day) within a specified time. The expiration date was approaching. Schulman threatened to call off its electricians and to proceed no further with any work until and unless its right to compensation for the disputed items was settled and definitely recognized. A meeting of the parties was had, and the questions thoroughly discussed. The coverage of the original contract and the differences, if any, between the Government specifications and the Westinghouse diagrams which were before Schulman when it made its bid, constituted the bases of the parties' contentions. Schulman claims a new agreement was reached wherein it was agreed that Lamson would pay for said additional material and work. Lamson admits meeting with Schulman, but denies the making of an agreement to pay for the additionals. It also pleads that if such agreement were made, it is unsupported by a consideration and was made under duress.

Whether the evidence, which in its more important aspects was in writing, established a new or modified agreement, was for the court and not for the jury to determine.

Not only was the question one for the court, but the evidence, we think, clearly established the existence of the new agreement. It appears that immediately after the meeting which Schulman says resulted in a new agreement and pursuant to the understanding reached at the meeting, Lamson sent Schulman a telegram which read:

"Referring our discussion regarding extra Chicago Post office wiring Stop Pro-

ceed with work at once as outlined on Westinghouse drawings received by you November tenth 1933 Stop Proceed with installation of additional motors and change in sequence wiring Stop Total cost of all about six thousand seven hundred seventy five dollars Stop Formal order to follow."

The telegram was immediately followed by a written order which read:

"Furnish necessary labor and materials to complete the electrical installation of mail handling equipment at the U. S. Post Office, Chicago, Illinois and provide for complete acceptance by the Treasury Department. Work covered by this order to include the following:

"1. Provide for complete installation of electrical system for 5" loose letter belts described in Westinghouse diagrams dated October 20, 1933. Cost $5184.30.

"2. Make required changes in sequence wiring described in Mr. Flynn's letter of February 15, 1934 attaching thereto lists dated February 14, 1934, pages 1 and 2. Cost $385.00.

"3. Provide for installation of all lanterns required by specifications located at 8th floor openings for seventh floor belts. Cost $996.00.

"4. Install additional motors and controls for 5" loose letter belts system as called for by your letter of January 26, 1934. Cost $1205.70.

"*This order is issued at your request against your claim that the foregoing work is not included in our order C-16.*

"All terms set forth in our order C-16 apply also to this order."

In the face of these two communications, the conclusion is inescapable that the parties modified their agreement and by such modification Lamson agreed to pay Schulman $7771 for the four items covered by this order.

■ We must likewise reject Lamson's contention that the agreement, if found to exist, was without consideration. Schulman's claim was for a larger sum. It reduced this sum in order to obtain an adjustment. This reduction in price in Schulman's claim was consideration for the new agreement.

Likewise, the adjustment of differences arising out of a contract made between a contractor and sub-contractor would afford a sufficient consideration for a modification of the original agreement.

■ On the question of duress we must assume, in view of the instructions and the verdict, that the jury found for Schulman. In other words, we must assume there was no duress. We do not believe it advisable to express an opinion as to whether the evidence was, as a matter of law, sufficient to establish duress because on a new trial the evidence on this issue may be more complete. If it be a question for the jury then the court should instruct the jury fully upon what constitutes duress.

■ As to the contention that the agreement was invalid because the original agreement called for performance of the same work, little need be said. Whether the original agreement called for additional work not covered by the specifications, to the performance of which Schulman objected, was a matter of dispute. The parties had the right to settle their controversy, and the new agreement which resulted from the settlement was valid even though it was in conflict in some respects with the original agreement.

There are other items claimed by the plaintiff which we think stand on the same footing as the four items above referred to, provided the jury finds for the plaintiff on the controverted issues of fact.

■ We have considered the defendant's counterclaim, and it furnishes the only serious basis for support of the verdict which the jury rendered. We can not agree with Schulman's counsel that the counterclaim is out of the case, for, in determining whether the verdict can be supported by any evidence in view of the findings in plaintiff's favor on defensive issues raised by the Lamson Company, we must consider the possibility of the jury's setting off sums claimed by Lamson in its counterclaim.

We have, however, reached the conclusion after a study of all the evidence that even considering the possibility of allowing certain sums that might have been allowed on this counterclaim, these items were insufficient to reduce the $7771 to $1364.41, the amount awarded by the jury.

The bill of particulars supporting the counterclaim consisted of five claims. The fifth one was for $787.50. $87.50 of this item was by Schulman conceded at the trial to be proper. The $700 claim was by Lamson withdrawn.

Several of the larger items, including item 6 of claim 3 of the bill of particulars, amounting to $5,184.30, can not upon the

evidence be sustained. The same applies to several other items in this claim 3.

Inasmuch as there must be reversal of the judgment and a new trial had, we deem it unnecessary to consider questions not likely to arise on the new trial. The reversal of the judgment reinstates the counterclaim.

The motion to dismiss the appeal has also been duly considered, but in our opinion must be denied. The appeal was allowed by the court before the new Rules of Civil Procedure became effective.

The judgment is reversed, with directions for a new trial.

The motion to dismiss the appeal is denied.